Services Capital, LLC, and Michael Fazio, a found by Alan Nagorski. Mr. Nagorski, you may proceed. May it please the court, I along with Michael Shapiro represent the appellants in this case. We thank you for the opportunity to argue this appeal before you today. As set forth in our brief, the circuit court's judgment in this case was wrong in at least four respects. We start with the erroneous ruling in plaintiff's favor on its wage act and breach of contract claim. That decision was against the manifest weight of the evidence. This is not an easy standard to meet, but it is met here because the circuit court made a profound factual error on the most critical issue in the case. That error infected the rest of its ruling, leading the court to ignore other critical evidence in the record. Specifically, the trial court made the following finding of fact. There was a written employment agreement with McCoy and MarCorp that provided he would be paid a salary and a bonus. There is no indication of a retention bonus or a deferred bonus or any other description of a bonus contained within the employment agreement. There was no evidence at trial of any written agreement between McCoy and MarCorp. In fact, it is undisputed that none exists. Plaintiff never once contended otherwise. So it's a rather astonishing written ruling given the record. It almost, you almost wonder whether the judge meant to slip in the word no before that, but he didn't. My question is, isn't there just a host of evidence of an oral contract that would otherwise support all the things you're complaining about? There is a host of other evidence, but it does not support the conclusion that the court reached. And I would start by saying, given that the fact that the court not only said there was no written agreement, but also went on to discuss what was or what was not within that written agreement, it does not seem that it was a Scribner's error, and generally this court will take... I'm not suggesting that it was a Scribner's error. It's just rather astonishing that it was... Okay, I'll move on to the... That error, though, when we look at the evidence on the other points, caused the circuit court to basically ignore the history of communications between Mr. Fazio and Mr. McCoy that made clear that Mr. Fazio's position, who the circuit court found had complete discretion in setting bonuses, that it was his position that an employee would be entitled to a deferred bonus payment if he or she were still employed by MarCorp when that payment became due. In these communications, which are set forth in our briefing and are found in our appendix, they start before the first deferral at issue in this case. In particular, I think it's important to look at the communications between Mr. McCoy and Mr. Fazio in January of 2017. This is before the first deferral, and this is Mr. McCoy's words. What I have tried to do in making this recommendation to Mr. Fazio, he says, what I have tried to do is make sure there is enough deferred compensation to keep the team intact and get them focused on the future. A week later, on January 17th, and in another exchange between the two men, Mr. Fazio confirmed that some of the bonus amounts were going to be deferred in order to provide an incentive to commit to the firm. Before the first payment, Mr. McCoy and Mr. Fazio, before the first deferral, were in agreement that the purpose was retention of employees. That's before the first, so there is agreement between the two on that point. Obviously, in order for a deferred bonus to be a retention tool, it has to be contingent on the person still being there. Otherwise, it has actually the opposite effect. This exchange and this agreement was ignored by the trial court. Mr. Fazio follows that up with communication on January 12th, 2018. If people leave, they don't get deferred bonus allocated to others. Then again, in mid-2018, Mr. Fazio tells Mr. McCoy deferred comp goes away if employee opts to leave or is fired for cause. Then in 2019, Mr. Fazio himself, for the first time, prepares the comp sheet. In other years, it was prepared by others. In that, he again makes clear what he had been telling Mr. McCoy for years, that the deferred comp is contingent on people remaining in the company. The circuit court ignored this evidence in favor of the fictitious written agreement. Even if there were no agreement on this point in this case, that would be plaintiff's burden and would cause their case to fail. In here, there is no evidence in the record that Marcor or Mr. Fazio ever agreed that somebody would get their deferred comp if they left the company. That is not in the record. Thus, on that point, there is no agreement or mutual assent. There is no unequivocal promise. For that reason as well, the court's ruling should be reversed. At the very least, the amount, the award should be reduced by the approximately $83,000 that was awarded on the last sheet because there was no entitlement to that bonus until it showed up on the sheet. When it showed up on the sheet, there was a condition. There can be no question with respect to that $83,000, the last deferral, that at least that was clearly conditioned. We would request that the decision be reversed in its entirety, but at least with respect to that $83,000, we believe the court was an error. Of course, if the $83,000 is reversed, then the statutory interest would have to be appropriately recalculated. Turning to the next issue in the case, if I may, pre-judgment interest. It is undisputed that the trial court found that MarCorp made a $200,000 loan to Mr. McCoy and that such loan was due on the date of Mr. McCoy's resignation. Under those circumstances, an award of pre-judgment interest is mandatory. There are six situations set forth in the Interest Act, and that would be money lent or advanced for the use of another is where this fits in, and under the Chandra case, we cite it, an award of, if it fits within one of those six provisions, pre-judgment interest is mandatory and should have been awarded here. And that's the case even if there was an agreement, even if the loan agreement itself said zero interest. Once it's due an owing and not paid, that pre-judgment interest continues to apply. Yes, the pre-judgment interest kicks in, and that's exactly what happened in this case. In addition, I'll move on to the next issue, which is the issue of attorney's fees. So in this case, the circuit court awarded plaintiffs the entirety of their attorney's fees for this case without regard to the fact that there were other unrelated things litigated in this case, including the counterclaim on which plaintiff did not prevail. The law on this point is, I think the parties are mostly in agreement on what the law is. The law is that in a situation where some work might be subject to a statutory fee-shifting provision, the plaintiff may still recover if it has some other unsuccessful claims. They're not going to necessarily have to parse those out if there is a common core of facts or related legal theories. But the case law goes on to say that where the plaintiff failed to prevail on a claim unrelated to the successful claims, the hours spent on such claim must be excluded from the fee award. Such claims shall be treated as if they had been raised in a separate lawsuit. So in this case, starting with the... The circuit court did not even require a plaintiff to take out any time or make any reduction for the unsuccessful defense of the unrelated loan counterclaim. That counterclaim had nothing to do with deferred bonuses. It had nothing to do with the bonus program. It was completely separate. It was found to be a loan. He didn't pay it back. They lost on that claim. At least some of their fees should have been reduced. In fact, plaintiff made no effort, in fact, to distinguish between those. And then also there were three of five claims that plaintiff dropped on the eve of trial, which also were unrelated. So either the award should be reversed in its entirety and denied for failure of plaintiff to carry its burden of proof or alternatively remanded with proper instructions. Are you indicating or suggesting that fees would not be allowable for any of the fiduciary claims? No, the fiduciary duty claims, that was one of our affirmative defenses. Okay, just want to make sure. Yes. So I would focus on the three claims they dropped and the loan counterclaim. Finally, we turn to breach of fiduciary duty. The circuit court misapplied settled Illinois law in finding that McCoy did not breach his heightened fiduciary duty to Marcor when he took the Beertorch investment for himself. Specifically, the circuit court found that Mr. McCoy did not breach his fiduciary duty because, quote, the opportunity was known by Fazio and he did nothing to bring it to the attention of Marcor for consideration, nor did he obtain, nor did he request of McCoy or McBain to obtain, more information about Beertorch. When did Fazio learn that McCoy made this Beertorch investment? Was it immediate? No, Mr. Fazio testified at trial that he did not know of Mr. McCoy's investment until after they had left and he was going through the records of the company. Is there not countervailing evidence from the other side that would suggest that he knew sometime in 2018? Not in February, but subsequent thereto, but before 2019. The evidence in the record, Your Honor, does not suggest that Mr. Fazio was aware that Mr. McCoy had invested. There is some evidence that there was some discussion that indicated that Mr. Lyons and perhaps others had invested. But there is no specific evidence of McCoy disclosing it. And even that, I will point out, even those conversations, it's undisputed that those happened well after the investment had made. The corporate opportunity required doctrine in Illinois is clear, and it requires disclosure and consent before the investment is made. And that did not happen in this case. And the circuit court, essentially, by focusing on Mr. Fazio, turned the entire corporate opportunity doctrine on its head. And basically, a lot of the things, well, we didn't think he was interested. You know, maybe he wasn't interested. Maybe this wasn't the right type of investment. But the cases we cite in our brief made clear that that is not a determination. The fiduciary should make. It has to be disclosed. It has to obtain consent. The circuit court also ignored key evidence. This evidence is that Fazio traveled to Beer Church early December 2017, provided information for due diligence late December 2017. Early January 2018, suggested to McCoy, Mr. McCoy, that McCoy invest $1 million in Beer Church and let Lyons manage the investment. And you say the circuit court ignored these pieces of evidence. I mean, is it fair to say that the circuit court didn't ignore them, just didn't put as much weight on them as witnessed credibility in other things? Well, I think based on his finding that Mr. Fazio did nothing to suggest that they should be looking into this, I would say that he disregarded in his conclusion that Mr. Fazio, in this two-month period where he visited the Beer Church, gave materials for due diligence, talked to Mr. McCoy about investing $1 million, I believe that indicates that he did not appropriately consider, at least, and he certainly didn't grapple with any of this in the opinion, that Fazio had suggested in early January a $1 million investment to Mr. McCoy. And given that, and then just a few weeks later, McCoy, with the other members of the management team, took this opportunity for themselves, making this a classic case of usurpation of a corporate opportunity and breach of fiduciary duty, and the circuit court's finding, to the contrary, should be reversed. I see my time. Any additional questions? No, thank you, sir. Mr. Nagorski, you'll have an opportunity in rebuttal. Thank you. Thank you. Ms. Grogan. Good morning, Your Honors. May it please the Court. I'm Amy Grogan, and I represent the estate of McCoy. I'll try to actually follow the same outline as Mr. Nagorski. First of all, let's talk about the error of the Court in saying that it's a written agreement. If you look at all the other findings of fact in there, and if you actually look at the trial testimony and the evidence, it's clear that Mr. McCoy had an employment agreement. He was actually assigned as president of MarCorp in the actual operating agreement, their first meeting. So there was an employment agreement, and Mr. Fazio himself testified that Mr. McCoy worked as president of MarCorp. So what the fact of the matter is, it was not written. That is an error by the Court. However, the manifest way that the evidence shows that, in fact, there was an oral agreement, and if you look at Exhibit 4, which is actually the document drafted by Mr. Fazio, which sets forth salary and bonus, those are terms of the agreement. And then if you go back and you look at all the other evidence, there was plenty of evidence set forth that Mr. McCoy received a salary, he received bonuses every year, and everybody was party to that. So while that is an error in one finding of fact, it's not against the manifest way of the evidence that actually there was a contract, it was breached, and there was a mutual assent to allow a wage act to recover. So let's talk about these e-mails and whether the bonus was actually you had to be there in order to be paid your bonus. As Mr. Nikorski stated, there were e-mails between Mr. Fazio and Mr. McCoy through the years. There was never any agreement. And, in fact, Exhibit 11, which was on June 21, 2018, it states that this was still an open item between them. And that's an e-mail from Fazio to Mr. McCoy. Right. And then there was another e-mail on January 12, 2018, which is Exhibit 111, and instead they're still talking about whether the employees should have to forego their bonus if they left. It just was not decided. Mr. Fazio decided when he sent that in 2019, and he sent the e-mail out. It was clear from the evidence that that was a unilateral decision, which is why the rest of the arguments about discretionary and precondition fail, and that Mr. McCoy was due his bonus when he left. Prior to a bonus being decided and put in the books, so to speak, Mr. Fazio had unfettered discretion to award a bonus, not award a bonus. Would that be fair? Well, we argued differently at the court, but I believe that the judge decided that he had the discretion, but he made that discretionary decision when he decided to award it. Agreed. But he could, at any particular time before it's put in the book, before it's, I'll use the word awarded, but he could, I suppose, if he has the unfettered discretion to not pay or not pay a bonus, he could presumably include in that unfettered discretion the decision that it's only going to pay out if you're still employed by MarCorp. Yes. Now, whether that happens is a separate question, but would you agree? I would agree that he would going forward if he had going forward. However, 2018 had finished.  And when he awarded it, it was a bonus for 2018. And as it relates to this discussion, can you just focus briefly on this $83,000 payment that Mr. Nikorski brought up? So he was awarded and paid out in 2019, that first part of his bonus. And he believed that he was going to, or I believe too, that if he stayed, that he was agreeing to that condition precedent for the next year, right? He was going to agree to the fact that he then had to be employed in order to receive the rest of his bonus. So he took his bonus and he quit and said, give me the rest of my bonus. So there's nothing wrong about him taking that $83,000. It was awarded for his 2018 work. And in fact, the problem is that the rest wasn't given to him. And that's where the wage act comes in. If I can ask, and I don't want to take too much time on this, but I think your position at the trial court was that it took two to tango, because the 4.2 of the operating agreement would suggest that decisions by managers would require a simple majority, which means a 50-50 deadlock in this case. Correct. But what's your thoughts? However, if they were voting to appoint the managers or remove one or to call a special meeting, that would be weighted. Is that correct, under 3.4? So certainly there was weighted decisions in the operating agreement. But it wasn't specified that management actual compensation was one of those. I understand that. Yeah. Yeah, so, yes. So Fazio could have called a notice of special meeting, removed McCoy as a manager, and done what he wanted to do. Correct. He could have just done it and changed his mind and gotten rid of him, and then we would have a whole other lawsuit. But you took the position at trial that it would take a majority vote of the two. Right. And then both of them, and through the operating agreement, that they never agreed. If you look at the battle of the emails, there was never an agreement. And so that's why it takes two to make that decision, which is why I don't believe that even Mr. Fazio putting that on there for a future would have even upheld. However, you know, they all left instead. We don't need to get there. We never had to go that far. Okay, so let's talk about prejudgment interest. Prejudgment interest, certainly Judge Cernas awarded interest free loan. And I just would like to point out to the court, defendants never asked for prejudgment interest in their pleadings. They never asked for prejudgment interest at trial. They never did any of that. Do they have to? Well, I believe that, yes, at trial, you have to ask for it as part of your judgment. I don't think that it's automatic that you can just say after the fact, now I want it. And I think that the other issue to consider is the fact that when it actually happened. So Judge Cernas said that it became due when they left on the 19th of February, 2019. At that point, it was contested. So is it really under the act? Is it really certain as it has to be? So I think that that is the issue. That was already, it was something that was litigated. It was never definite and clear. If you look at all the case law, it's always this was definite and clearly owed. They contested that it was a loan. They contested that it was even, there was any interest at all. Granted, they didn't win, and there was an interest free loan. Was there any evidence of payment of income taxes, given that it wasn't a loan? No, there was none. Okay. So there was no taxes paid. There was no nothing. I suggest it was an income, but something other than income, wasn't it? And we did a lot of arguing of that. But at some point, and so that was an argument we certainly lost. But I think at that point, is it really due and owing? So is it certain enough that you would be able to even get prejudgment interest? But in addition, that when they did absolutely not get it, and they didn't ask for it at trial, that Judge Aranda was correct. And this is not, now we're not against ANOVA, because Judge Aranda came in after Judge Cernas, and he said, but you never asked to get a motion to reconsider and say, but we want our prejudgment interest. They never put it before the court within those 30 days. Instead, they just requested. And he's correct in that if they would have asked for it at trial, maybe Judge Cernas would actually have ruled on it. But they never gave him the opportunity to rule on it. It's not in the pleadings at all? Not in the pleadings. It never even came up until they made their motion. So it wasn't until the motion, and the motion was not a motion to reconsider. So that is something to consider. And then moving on to attorney's fees, just so I have enough time for everything. It is all of these defenses, and even the loan, they were all affirmative defenses. Even the loan and everything, they were all in one pleading. And so there was a common core, and this is an abuse of discretion standard, and I just cannot say enough that it was three witnesses. They were all involved in all of this. It was a set of core facts. And so defense takes issue with three things. They take issue with the fact that we have three extra claims. Two claims were added for the purpose of the fact that they wouldn't turn over the K1s, and the second one was that they wouldn't turn over evidence that we needed for the IRA. This was after Mr. McCoy died. We quickly amended the complaint just to get materials. There was nothing to try. They finally turned it over. And then the last was carried interest. And carried interest kind of went to that whole loan issue. And so actually it was part of it. We just chose at trial not to move forward with that one because of the evidence. Once Mr. McCoy died, it was a little bit harder to set forth the carried interest argument. So it was a tactical issue, but it didn't change any of the discovery. It didn't change any of the testimony. They would have all testified to all of that anyway. So there was an argument that actually that quote-unquote loan that we said was not a loan was used to fund Beer Church. It just all was common core facts. And I think that Judge Sernus and Judge Aranda afterwards saw the fact that these all went together. So the allegations that that money was used to fund Beer Church, and Beer Church was the defense to once we filed for the wage, they wanted the breach of fiduciary duty. It was a small office, and everybody threw it all in, and the testimony was all there. What's frustrating to me is that in addition, they filed a third-party complaint against Mr. Lyons. And they brought all that in, and we took painstaking efforts to separate that so that that was never part of the attorney fees petition. We billed them differently. We separated it with great anticipation, knowing that Mr. Lyons, who was an independent contractor, would never have attorney's fees. So it's disingenuous now for them to pick apart and say we didn't do any of that because we really cut all the depths in half. All the charges were done and were separated. So I think that Judge Aranda was correct. Common core elements of fact. It's abusive discretion standard. These were all intertwined. And then last, Beer Church, I hate to belabor the Beer Church, but Mr. Lyons was an independent contractor. It was his high school friend. He took Mr. Fazio out there. He saw Beer Church. He had every opportunity to invest. There was plenty of testimony from both Mr. Lyons and Ms. McBain about the knowledge of Mr. Fazio. So I do think it was incorrect that defense said, oh, there wasn't. Mr. Fazio testified he didn't know. There was plenty of contrary testimony as well. And the judge made the decision based upon the testimony that he heard. Was there contrary testimony that between February of 2018 and the separation that he knew that McCoy rather than McBain and or Lyons invested? Yes, he knew that they all invested. I'll have to read the testimony. Yes, yes. There was plenty of information that they knew. I believe it was even more importantly, though, is Mr. Fazio and Mr. McCoy didn't have agreements where they couldn't invest in other things. There was no restrictive covenant. There was testimony that Mr. Fazio bought himself an apartment and rented it out in Florida. They did other things. And so he got the opportunity. He had an opportunity. He could have pursued it with Mr. Lyons. He chose not to. But even if he hadn't, Mr. Lyons didn't have to bring it. It wasn't Mr. McCoy's opportunity to bring to MarCorp. And there was evidence that was presented that Mr. Lyons didn't want to. And so the fact that Mr. McCoy decided to invest in it, they each had their separate investments that they did. And there was testimony to that fact. So I'm down to my last minute. Does anybody have any questions? I do have one. My recollection is that Judge Cerny on the Interest Act issue made a determination, at least one of the basis for failing to award interest, was that MarCorp did not establish the purpose of the loan. I don't see that requirement in the Act, is it? I don't think that's it. No, that is not a requirement in the Act, no. Okay, thank you. All right. Thank you. Thank you, Ms. Nogan. Mr. Nagorski, you are rebuttal. Thank you. Very quickly on the pre-judgment interest issue, we did move, as soon as there was something to move on, as soon as we had an award within the 30-day period provided by Rule 2203. I just point to a case that actually was cited by the appellees in their brief, Pregnano v. Pregnano, 405 L. Appford. It looks like it's 801. My eyes are turning me right. But in that case, the court said, if the interest was imposed pursuant to the Interest Act, it could have been sought at any time while the case was pending before the trial court. Pre-judgment interest need not be requested in the complaint in order to be recoverable under the Interest Act when the evidence at trial establishes that a party is entitled to pre-judgment interest under the Interest Act. So that's one of their cases that is holding that. And also, the counterclaim did reference… But that would presuppose a certain amount of certitude in terms of… Correct. How do we come to the conclusion that that level of certitude was met, given the dispute, ultimately decided in the client's favor, but given the dispute about whether this was a loan in the first place? Sure. There was a dispute about whether it was a loan in the first place. That goes to the liability. The amount is what has to be readily ascertainable for pre-judgment interest. So the certitude goes to the amount. Correct. And it was $200,000. There was no dispute that it was $200,000. Very quickly, on the attorney's fees, there's simply no authority to award attorney's fees on an unrelated counterclaim on which the party did not prevail. Unrelated and unsuccessful defense of the counterclaim. They're clearly not entitled to attorney's fees on that. And then, again, going back to the wage act and the breach of contract, we set forth the reasons why we believe it was against the manifest weight of evidence, beginning with the fictitious written agreement finding, as to why we think the court should be reversed in its entirety. But a key thing is that when counsel was making the argument, at least three times referenced no agreement, no agreement, no agreement. It is their verdict. If there is no agreement on this point, and they clearly, from the very beginning of deferring, the best you can say, we believe it shows there was an agreement in 2017, because Mr. McCoy sent an email saying he understood the purpose of it. But if there was no agreement, no meeting of the minds on this key point, those two claims fail, because that was their verdict. And then, again, when we look at the $83,000, because there was no, unlike some of the other cases that were cited in this case, there was no formula. There was no nothing. This was, as the circuit court found in Mr. Fazio's discretion. So that means that there can be no entitlement to the bonus. This was not retroactive. There was no entitlement to the bonus until it showed up on that sheet. So at least with respect to that late $83,000, it showed up at the same sheet at the same time as an express condition on the same sheet that the deferred amount of that bonus would not be paid unless the person remained at the company, which was consistent with what Mr. McCoy and Mr. Fazio agreed all the way back in 2017. And that's, if there are no further questions. I have one. Sure. You had just suggested that if there's no agreement, that's their failure burden. I think what there's, I mean, my understanding of the McCoy argument is there was no agreement with regard to deferring anything. There was a prior agreement that they would be awarded, they would have a relatively low salary and significant bonuses, and the earlier agreement did not contain any contingency or deferral. Is that how you see their argument, or do you see it differently? The first few years, I don't believe there was any specific argument about the contours of the bonus. In the first few years, they were paid out. Right at that 2017, so when they're awarding the 2016 bonus in 17, that's when they first had this discussion about deferral and agreed that it would be a retention tool. So at that point, and then, you know, they stayed. Bonuses were deferred as a retention tool, and Mr. McCoy stayed for two years after that. So I think at that point they certainly had agreed to the deferrals. And if you look at the 2017 exchange, they also agreed that it was a retention tool. And also Mr. Fazio ultimately had the discretion, and if he had the discretion to award a zero bonus, he would also have the discretion. I apologize. No, go ahead. The initial deferrals, there was no question that those were retention related. Those were a function of waiting for a deal to close and the ability to pay out. Isn't the record suggesting that, at least initially? I don't know if there's record of that. I know that was perhaps in the record in the McBain case, but I don't believe that it is at least as clear in the record here. But what is here is, in 2017, a very express conversation that at least one of the purposes is retention, and that's in that email exchange that's in our appendix, where Mr. McCoy on January 10th says, this is being deferred to give the team an incentive to stay, and Mr. Fazio echoes that. So I think that exchange is key, because what I would say, Your Honors, is we then, at that point, 2017, when we start deferring, the two gentlemen are aligned on that retention purpose. There's not a hint until a year or so later, and at that point, they have their own investment. They have Beardchurch. They have one eye out the door, so of course they're going to start arguing about it. But in 2017, when it was deferred, both gentlemen were clear that it was retention, and if it's retention, that means it's not paid out, unless the person is there.   The Court thanks both sides for spirited argument. We're going to take the matter under advisement and issue a decision in due course.